IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RUSSELL DEBUF, individually and as court appointed conservator of MONTE DEBUF,<br><br>               Plaintiff,<br><br>vs.<br><br>TAURUS J. HILL, and PACIFIC WEST CONSTRUCTION, INC..<br><br>               Defendants.<br>_____<br><br>TAURUS J. HILL, and PACIFIC WEST CONSTRUCTION, INC.,<br><br>               Third-Party Plaintiffs,<br>vs.<br><br>NATHAN RYAN DEBUF,<br><br>               Third-Party Defendant. | CV 17-24-BLG-SPW-TJC<br><br><br>**ORDER** |

Russell Debuf, individually and as court-appointed conservator of Monte Debuf, brings this action against Defendants/Third-Party Plaintiffs Taurus J. Hill and Pacific West Construction, Inc., in relation to a motor vehicle accident that occurred near mile marker 345 on Interstate Highway 90 east of Livingston, Montana.

1

Presently before the Court are Defendant/Third-Party Plaintiffs' Motion for Partial Summary Judgment (Doc. 29); and Plaintiff's Motion for Partial Summary Judgment (Doc. 34). The motions are fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court finds Defendant/Third-Party Plaintiffs' Motion for Partial Summary Judgment should be **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment should be **DENIED**.

## I.    FACTUAL BACKGROUND[1]

On September 21, 2014, Nathan Debuf ("Nathan") and Monte Debuf ("Monte") were traveling on Interstate 90 near Livingston, Montana, when Nathan struck a trailer being pulled by Taurus J. Hill ("Hill"), while in the scope of his employment with Pacific West Construction, Inc. ("Pacific West") (collectively "Defendants"). Monte suffered severe injuries as a result of the accident. Monte's father, Russell Debuf ("Russell"), individually and as Monte's court-appointed conservator, brought this action against Hill and Pacific West. Plaintiff asserts claims for negligence and loss of consortium. Thereafter, Hill and Pacific West filed a Third-Party Complaint, asserting claims for negligence against Nathan.

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

They have also asserted affirmative defenses of comparative negligence and apportionment of liability as to Monte.

On the weekend of the accident, Nathan had traveled from Billings to Bozeman to help his brother build a deck. Afterward, on September 21, 2015, he traveled to Butte to pick up Monte so they could drive back to Billings together. While he was in Butte, Nathan stopped at a convenience store and picked up a six-pack of beer. Monte was not with Nathan at the time he purchased the beer.

Nathan and Monte left Butte at approximately 7:00 - 7:30 p.m., with Nathan driving. Nathan set the cruise control on his Honda Civic to 75 miles per hour. Nathan recalls drinking two beers from the six pack while driving. He had also taken 5 milligrams of prescription oxycodone the day prior. Nathan recalls Monte may have had three beers in the car while Nathan was driving. But neither Nathan nor Monte remember anything about the events immediately preceding the accident.

On the date of the accident, Hill was traveling in a 1985 Dodge truck with a flatbed trailer from Idaho Falls to Billings with a co-worker. The trailer was owned by Pacific West. Hill encountered problems with his truck during the drive, and had to stop twice for repairs due to electrical and oil issues. At some point prior to 9:30 p.m., Hill pulled off I-90 onto the shoulder near mile marker 345 in

Park County to check his oil. It was dark outside, and there was no lighting on the roadway.

After Hill finished putting oil in his truck, he began merging onto I-90 east, toward Billings. Hill testified that he saw one set of headlights approximately one mile to a mile-and-a-half behind him as he began to merge back onto the highway. The parties dispute whether Hill's taillights on the truck and trailer were working or were visible to traffic at the time.

At approximately 9:30 p.m., after the truck and trailer had crossed over the shoulder line, Nathan's vehicle struck Hill's trailer from behind. At the time of impact, Hill was travelling 30-35 miles per hour. Nathan's speed at the time of the accident could not be determined. As a result of the accident, Monte suffered a severe brain injury and is permanently disabled.

According to a toxicology report, Nathan's blood alcohol level was .085 at the time his blood was drawn approximately 2.5 hours after the accident. He also had trace amounts of oxycodone in his system. Monte's blood alcohol level was less than .013% approximately 2.5 hours after the crash.

Nathan was cited for driving while his license was suspended and for DUI. Hill was charged with a violation of Mont. Code Ann. § 61-8-828(1), for changing lanes when it was unsafe to do so.

At the time of the accident, Monte's father, Russell, lived in Billings; Monte did not live in Billings. But Monte would visit Russell from time to time. Russell testified that it was hard to pin Monte down to a specific time he would visit, as he "left when he wanted to leave. Came when he wanted to [] come." Russell estimated that he spoke with Monte on the telephone approximately twice a week. Russell described his relationship with Monte as good, and that he and Monte were pretty close.

During his visits to Billings, Monte helped Russell with outdoor manual labor, including stone-based construction and remodeling projects, and Russell generally described him as a "great help." Russell relied on Monte's help in this regard because Russell is disabled. Russell suffered a traumatic brain injury, and his leg is amputated above-the-knee. His injuries prohibit him from easily performing indoor and outdoor construction tasks. Without Monte's assistance, Russell would have had to hire workers at significant financial expense. Because Monte is no longer able to help Russell, he will have to hire outside help for future projects.

Monte did not help Russell with day-to-day tasks or chores like laundry. Monte also did not provide any financial support to Russell. Russell indicated he talked to all of his children about keeping him out of a nursing home. Nevertheless, Russell and Monte did not have a specific agreement as to whether

Monte would eventually move in with and take care of Russell. At the time of the accident, Russell did not believe Monte had any plans to move to Billings.

## II.    LEGAL STANDARD

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587.

/ / /

/ / /

/ / /

# III. DISCUSSION

## A. Defendants' Motion for Partial Summary Judgment (Doc. 29)

Defendants move for partial summary judgment in their favor as to Russell's loss of consortium claim. Defendants argue Russell cannot recover under his loss of consortium claim because his relationship with Monte does not meet the extraordinarily close and interdependent standard required for such claims under Montana law. Plaintiff counters that it is a question of fact for the jury to determine whether Russell and Monte's relationship warrants damages for Russell's claim.

Under Montana law, parents generally cannot recover damages for loss of consortium in relation to the serious injury or death of an adult child unless there is "significant evidence of an extraordinarily close and interdependent relationship" between the parent and child. *Hern v. Safeco Ins. Co., of Illinois*, 125 P.3d 347, 362-63 (Mont. 2005). *Hern* held that the trial court initially determines as a matter of law whether "such a quality parent-child relationship [can] be found." *Id*. at 363. If the court determines sufficient evidence of such relationship exists, it is then "the jury's responsibility to determine whether such a relationship actually existed and, if so, whether it warranted recovery under a loss of consortium claim." *Id.*

In *Hern*, the Montana Supreme Court declined to "craft a hard and fast set of facts or rule" for evaluating loss of consortium claims by parents of an adult child. *Id.* at 362. Rather, the Court indicated the proof of the quality of the relationship should be measured with reference to the facts in *Bear Medicine v. United States*, 192 F.Supp.2d 1053 (D. Mont. 2002), where a parental loss of consortium claim was allowed.

In *Bear Medicine*, 33-year old Leland Kicking Woman was seriously injured and died nine months after an accident at a timber harvesting site. Leland was survived by his elderly parents who depended on him for physical, social, emotional, financial and spiritual support. *Id.* at 1060. Leland spent many hours with his parents and ran their family ranch and lease holdings. In addition, Leland was the person chosen to carry on his family's tradition of tribal and spiritual leadership. Leland's father had groomed Leland since his early teens to become the bundle holder of the Blackfeet Tribe, a position held in high regard as a role model, spiritual guide, and advisor to the Tribe. Leland would have led several ceremonies and performed duties for the benefit of the tribe, as well as being entrusted with a century's old artifact.

In *Hern*, the Montana Supreme Court found the "*Bear Medicine* standard" had not been met. *Hern*, 125 P.3d at 363. There, Becky Hern was killed in motorcycle accident. *Id.* at 350. She lived with her parents at the time. *Id.* But

the Court noted she did not contribute financial support to her parents, did not manage their property or holdings, and most importantly, there was no factor similar to Leland's tribal and spiritual role evident in the case. *Id.* at 363.

Here, the Court certainly sympathizes with Russell and has no doubt he and Monte had a close relationship. Nevertheless, the facts of this case are more akin to those in *Hern* than in *Bear Medicine*. Monte did not live with Russell; he did not provide financial support to Russell; he did not assist Russell with day-to-day tasks or manage his household; and Monte had no plans to move to Billings to care for his father. Although Monte assisted Russell with construction projects, which saved Russell money, the Court does not find this meets the "high level of proof" required to allow recovery for parental loss of consortium. *Hern*, 125 P.3d at 363. Further, there is no evidence Monte played a special role in his family or community similar to the decedent in *Bear Medicine*. Therefore, the Court finds as a matter of law, Plaintiff has not produced sufficient evidence to show "an extraordinarily close and interdependent relationship" between Russell and Monte. *Id.* at 362-63. Defendants' are therefore entitled to summary judgment on Russell's claim for loss of consortium.

### B. Plaintiff's Motion for Partial Summary Judgment (Doc. 34)

In their answer, Defendants raise several affirmative defenses relative to the alleged comparative negligence of Monte and apportionment of liability between

the parties. Plaintiff moves for partial summary judgment on those defenses as to Monte. (Doc. 34.) Plaintiff argues the undisputed facts do not support Defendants' affirmative defenses because Monte was a mere passenger in Nathan's vehicle, and Nathan's alleged negligence cannot be imputed to Monte. Therefore, Plaintiff contends summary judgment is appropriate as to Monte on Defendants' Fifth, Sixth, Seventh, Eighth and Ninth Affirmative Defenses. Defendants counter that there is sufficient evidence from which a reasonable jury could find Monte's conduct constituted comparative negligence, and that his negligence was a proximate cause of his injuries.

It has long been held in Montana that "[t]he primary duty of caring for the safety of the vehicle and those riding in it rests upon the driver." *Marinkovich v. Tierney*, 17 P.2d 93, 98 (Mont. 1932). A passenger, however, "is not absolved from the duty of using ordinary care for his own safety." *Wolf v. Barry O'Leary, Inc.*, 318 P.2d 582, 586 (Mont. 1957). A vehicle passenger may be found to be negligent if the passenger actively participates in the driver's negligence, is aware of the driver's incompetence or carelessness, or knows that the driver is not taking proper precautions and fails to warn the driver of that danger. *Marinkovich*, 17 P.2d at 98.

A passenger's negligence, however, must also be a proximate cause of their injury. "Contributory negligence by definition in Montana includes 'proximate

10

cause.'" *McAlpine v. Midland Elec. Co.*, 634 P.2d 1166, 1172 (Mont. 1981). Thus, "for contributory negligence to be available as a defense, the negligence of the plaintiff must have been a proximate cause of the injury." *Id.* It is not enough to show that the plaintiff was negligent. *Fulton v. Choteau Cty. Farmers' Co.*, 37 P.2d 1025, 1031 (Mont. 1934). Rather, "such negligence must have directly contributed to the injury at the time it was inflicted; it must have been a proximate cause of the injury." *Id.*

Generally, situations involving whether a passenger knew that the driver was driving under the influence present questions of fact as to whether the passenger was comparatively negligent. *See Hoffman v. Herzog*, 491 P.2d 713, 716-17 (Mont. 1971) (noting that generally when the Court had faced the question of whether a passenger was guilty of contributory negligence in riding with an intoxicated driver, the issue was a jury question); *Faulconbridge v. State*, 142 P.3d 777, 795 (Mont. 2006) (finding comparative negligence is a jury question, and stating "[i]f sufficient evidence exists to show that in the exercise of ordinary care the passenger should not have chosen to ride with an intoxicated driver . . . 'the jury should be so instructed as a separate issue of negligence involving the passenger[].'") (quoting *Buck v. State*, 723 P.2d 210, 217 (Mont. 1986); and *Westergard v. Peterson*, 159 P.2d 518, 520-21 (question of whether passenger was contributorily negligent for riding in a car with a driver who had been drinking

should have been submitted to the jury).  Likewise, the question of proximate cause "is ordinarily for the jury." *Fulton*, 37 P.2d at 1031.  *See also Green v. City of Roundup*, 157 P.2d 1010, 1013 (Mont. 1945) (holding the questions of contributory negligence of the plaintiff and the proximate cause of the injury were for the trier of fact).  "Contributory negligence is a question of law only when the evidence is of such a character that will support no other legitimate inference." *Fulton*, 37 P.2d at 1031.  "[E]ven where the facts are undisputed, if reasonable minds might draw different conclusions upon the question and from the evidence, the question is one for the jury." *Id.* at 1031-32.

Here, Nathan, as the driver of the vehicle, held the primary duty for the safety of the vehicle and for Monte.  Nevertheless, there is evidence from which a reasonably jury could find Monte was comparatively negligence, and that his negligence was the proximate cause of his injuries.  Although Monte was not with Nathan when he purchased the beer, it is undisputed that Nathan and Monte both drank the beer during the drive on September 21, 2014.  Thus, there is evidence from which it could be found Monte knew Nathan was drinking and may have known he was intoxicated.  Further, the fact Monte consumed approximately three beers himself, indicates he encouraged or participated in Nathan's drinking.  The evidence of Monte's participation in the drinking also may have led to a failure to warn or admonish Nathan's drinking or manner of driving.

Accordingly, the Court finds this case presents questions of fact for a jury relating to Defendants' affirmative defenses of comparative negligence and apportionment of liability to Monte. Plaintiffs' motion for partial summary judgment is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

(1) Defendant/Third-Party Plaintiffs' Motion for Partial Summary Judgment (Doc. 29) is **GRANTED**;

(2) Plaintiffs' Motion for Partial Summary Judgment (Doc. 34) is **DENIED**.

**IT IS ORDERED**.

DATED this 11th day of September, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge